Filed 7/18/13

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,                              )
                                         )
    Plaintiff and Respondent,    )                    S202790
                                         )
    v.                           )
                                         )            Ct.App. 5 F057736
COREY RAY JOHNSON,                       )
                                         )               Kern County
    Defendant and Appellant.     )         Super. Ct. No. BF122135A
                                         )
_____ )
THE PEOPLE,                              )
                                         )
    Plaintiff and Respondent,    )
                                         )
    v.                           )
                                         )            Ct.App. 5 F057736
JOSEPH KEVIN DIXON,                      )
                                         )               Kern County
    Defendant and Appellant.     )         Super. Ct. No. BF122135B
                                         )
_____ )
THE PEOPLE,                              )
                                         )
    Plaintiff and Respondent,    )
                                         )
    v.                           )
                                         )            Ct.App. 5 F057736
DAVID LEE, JR.,                          )
                                         )               Kern County
    Defendant and Appellant.     )         Super. Ct. No. BF122135C
                                         )
_____ )

1

We granted review to decide whether one may conspire to actively participate in a criminal street gang.[1]  One can.  When an active gang participant possessing the required knowledge and intent agrees with fellow gang members to commit a felony, he has also agreed to commit the gang participation offense.  That agreement constitutes conspiracy to commit the offense of active gang participation, and may be separately charged once a conspirator has committed an overt act.

## I.  BACKGROUND

Defendants Corey Ray Johnson, Joseph Kevin Dixon, and David Lee, Jr., were part of a 200-member Bakersfield gang called the Country Boy Crips (CBC).  CBC's rival gangs included the Eastside Crips and the Bloods.  Dupree Jackson, a CBC member, testified for the prosecution under a grant of immunity.  He was defendant Johnson's cousin and sold drugs for the gang.  He described the gang's structure and the different roles members filled.  Some sold drugs.  Some patrolled the boundaries of the gang's territory to keep out enemies and outsiders.  Some would "hang out," and some were "pretty boys" who brought women into the gang.  Others would "ride with the guns" to seek out and kill enemies.  Defendant Johnson sold drugs and was also a shooter for the gang with the moniker "Little Rifleman."  Defendant Dixon was considered a gang leader because he had been to prison and had family ties to the gang.  Defendant Lee would sell drugs, obtain cars, and drive for and "ride" with other gang members.

---

[1]     Penal Code sections 182, 186.22, subdivision (a) (hereafter section 186.22(a), the gang participation offense, or active gang participation).  Subsequent statutory references will be to the Penal Code unless noted.

2

Testimony of several witnesses established that between March and August 2007, defendants were involved in various retaliatory shootings against perceived rivals. On March 21, 2007, members of the Bloods shot Lee. He and Johnson retaliated by shooting Bloods member Edwin McGowan. Lee was fired upon again the following day. All three defendants were then involved in a retaliatory shooting on April 19, 2007, outside an apartment in Eastside Crips territory. Vanessa Alcala and James Wallace, neither of whom was a gang member, were killed during the incident. Ms. Alcala was pregnant. Anthony Lyons was also shot but survived. On August 9, 2007, a fellow CBC member was shot and killed. Defendants and Jackson identified the shooter, armed themselves, and drove to the home of the shooter's father. They intended to retaliate but were scared away when a car drove by. Two days later, Johnson, accompanied by Dixon and Lee, shot Adrian Bonner, a Bloods associate, paralyzing him. Jackson related statements Johnson and Dixon made about the shootings.

Johnson's girlfriend, Sara Augustin, also testified under a grant of immunity. She recounted various statements Lee and Johnson made about their involvement in the shootings. DNA testing of clothing found near the apartment shooting scene was linked to defendants, primarily to Johnson. Cell phone records reflected Dixon's and Lee's cell phones were at the location of the various shootings and were used to call each other or other CBC members before and after the events. Various witnesses gave descriptions of the participants that matched all three defendants.

The jury convicted all defendants of three counts of first degree murder with multiple-murder and gang-murder special circumstances, two counts of attempted murder, shooting at an occupied vehicle, active gang participation, and

3

conspiracy,[2] as well as various enhancements.[3]  Conspiracy was charged as a single count against each defendant.  That count alleged each had engaged in conspiracy to commit felony assault, robbery, murder, and gang participation.  The jury found each defendant guilty of conspiracy as charged.  All defendants received three terms of life without the possibility of parole for the murder counts.  Dixon received an additional term of 238 years to life, while Johnson and Lee received additional terms of 196 years to life.  Those terms included a term of 25 years to life for conspiracy as to Johnson and Lee, and 50 years to life as to Dixon (25 years to life, doubled under the "Three Strikes" law).

As relevant here, the Court of Appeal held that conspiracy to actively participate in a criminal street gang did not qualify as a crime.  It affirmed the conspiracy convictions, however, because each was also based on the valid theory of conspiracy to commit murder.  We granted the Attorney General's petition for review.

## II.  DISCUSSION

### A.  *The Law of Conspiracy*

Section 182 prohibits a conspiracy by two or more people to "commit any crime."  (§ 182, subd. (a)(1).)  "A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to

---

[2]     Sections 187, subdivision (a), 190.2, subdivision (a)(3), (22), 664/187, 246, 186.22, subdivision (a), 182, subdivision (a)(1), 186.22, subdivision (b)(1), 12022.53, subdivisions (d), (e)(1).

[3]     Johnson and Lee were additionally convicted of the attempted murder of McGowan and related enhancements.  Dixon was additionally convicted of two counts of being a felon with a firearm (former § 12021, subd. (a)(1)) with a gang enhancement.  Dixon was also found to have a prior serious felony conviction and served a prior prison term.  (§§ 667.5, subd. (b), 1170.12.)

4

commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416 (*Morante*); § 184; see also *People v. Homick* (2012) 55 Cal.4th 816, 870 (*Homick*).) "[T]he law of attempt and conspiracy covers inchoate crimes and allows intervention before" the underlying crime has been completed. (*People v. Perez* (2005) 35 Cal.4th 1219, 1232.)

Criminal activity exists along a continuum. At its conclusion is the commission of a completed crime, like murder. The principle of attempt recognizes that some measure of criminal culpability may attach before a defendant actually completes the intended crime. Thus, a person who tries to commit a crime but who fails, or is foiled, may still be convicted of an attempt to commit that crime. Yet, attempt still involves both mens rea and actus reus. "An attempt to commit a crime consists of . . . a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) To ensure that attempt principles do not punish a guilty mental state alone, an act toward the completion of the crime is required before an attempt will be recognized. "When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' [citation], the defendant may be convicted of criminal attempt." (*People v. Toledo* (2001) 26 Cal.4th 221, 230, fn. omitted, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 376.) For example, if a person decides to commit murder but does nothing more, he has committed no crime. If he buys a gun and plans the shooting, but does no more, he will not be guilty of attempt. But if he goes beyond preparation and planning and does an act sufficiently close to completing the crime, like rushing up to his

5

intended victim with the gun drawn, that act may constitute an attempt to commit murder.[4]

Conspiracy law attaches culpability at an earlier point along the continuum than attempt. "Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." (*Iannelli v. United States* (1975) 420 U.S. 770, 777 (*Iannelli*); *Homick, supra,* 55 Cal.4th at p. 870; *People v. Marsh* (1962) 58 Cal.2d 732, 743.) Conspiracy separately punishes not the completed crime, or even its attempt. The crime of conspiracy punishes the agreement itself and "does not require the commission of the substantive offense that is the object of the conspiracy." (*People v. Swain* (1996) 12 Cal.4th 593, 599.) "Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." (*Iannelli, supra,* 420 U.S. at p. 777.)

Under our statute, an agreement to commit a crime, by itself, does not complete the crime of conspiracy. The commission of an overt act in furtherance of the agreement is also required. "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement . . . ." (§ 184.) " '[A]n

---

**4**     See, e.g., *People v. Anderson* (1934) 1 Cal.2d 687, 690 ("Defendant's conduct in concealing the gun on his person and going to the general vicinity of the Curran theatre with intent to commit robbery may . . . be classified as mere acts of preparation but when he 'walked in there [Curran Theatre entrance] about two feet from the grill' and 'pulled out the gun' and 'was just going to put it up in the cage when it went off', we are satisfied that his conduct passed far beyond the preparatory stage and constituted direct and positive overt acts that would have reasonably tended toward the perpetration of the robbery . . . ."); *People v. Morales* (1992) 5 Cal.App.4th 917, 927 (substantial evidence of attempted murder where the defendant "loaded his gun, drove to his victim's neighborhood, and finally hid in a position that would give him a clear shot at [the victim] if [the victim] left by the front door").

6

overt act is an outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime.' [Citations.]" (*People v. Zamora* (1976) 18 Cal.3d 538, 549, fn. 8.) One purpose of the overt act requirement "is 'to show that an indictable conspiracy exists' because 'evil thoughts alone cannot constitute a criminal offense.' [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1131.) The overt act requirement also "provide[s] a *locus penitentiae*—an opportunity for the conspirators to reconsider, terminate the agreement, and thereby avoid punishment for the conspiracy." (*Zamora, supra,* 18 Cal.3d at p. 549, fn. 8; see also *Russo, supra,* 25 Cal.4th at p. 1131; *Morante, supra,* 20 Cal.4th at p. 416, fn. 4.) Once one of the conspirators has performed an overt act in furtherance of the agreement, "the association becomes an active force, it is the agreement, not the overt act, which is punishable. Hence the overt act need not amount to a criminal attempt and it need not be criminal in itself." (*People v. George* (1968) 257 Cal.App.2d 805, 808, italics omitted; see *People v. Hoyos* (2007) 41 Cal.4th 872, 915, overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 641.)

  *B. Conspiracy to Commit Active Gang Participation a Valid Offense*

  "The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. [Citation.] A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22(a). (§ 186.22, subd. (i).)" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).) A criminal street gang is defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having

7

as one of its primary activities the commission of [enumerated offenses], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).) A pattern of criminal gang activity is "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more [enumerated offenses]." (§ 186.22, subd. (e).)

The Attorney General argues conspiracy to commit active gang participation comes within the plain language of sections 182 and 186.22(a). Recognizing such an offense would be neither contrary to legislative intent nor violative of due process. In evaluating this claim, "[w]e begin with the familiar canon that, when construing statutes, our goal is ' " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " ' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 54-55 (*Albillar*).) " 'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' [Citation.]" (*Rodriguez, supra,* 55 Cal.4th at p. 1131.)

Nothing in the plain language of both sections 182 and 186.22(a) supports the Court of Appeal's holding. The offense of conspiracy to "commit any crime" was included in the original 1872 Penal Code. When the Legislature added section 186.22 in 1989 (Stats. 1989, ch. 930, § 5.1, p. 3253), it expressed no intention to preclude a conviction for a conspiracy to commit the crime of active gang participation. Entering its 15th decade since enactment, section 182 continues to prohibit a conspiracy to commit "any crime." (§ 182, subd. (a)(1).)

Concluding that one can conspire to actively participate in a gang is fully consistent with the underlying purposes of section 186.22(a). That provision is

part of the California Street Terrorism Enforcement and Prevention Act (STEP Act). "Underlying the STEP Act was the Legislature's recognition that 'California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods.' (Pen. Code, § 186.21.) The act's express purpose was 'to seek the eradication of criminal activity by street gangs.' (*Ibid.*)" (*People v. Gardeley* (1996) 14 Cal.4th 605, 609; see also *Rodriguez, supra,* 55 Cal.4th at p. 1129.) In concluding the felonious conduct underlying the gang participation offense need not be gang related, we observed in *Albillar*: "Gang members tend to protect and avenge their associates. Crimes committed by gang members, whether or not they are gang related or committed for the benefit of the gang, thus pose dangers to the public and difficulties for law enforcement not generally present when a crime is committed by someone with no gang affiliation. 'These activities, both individually and collectively, present a clear and present danger to public order and safety . . . .' (Pen. Code, § 186.21.)" (*Albillar, supra,* 51 Cal.4th at p. 55.) Recognizing conspiracy to commit active gang participation as a valid offense furthers these purposes by affording prosecutors additional charging options in gang cases, and making additional punishment available.

The Court of Appeal found a contrary intent expressed in section 182.5, a different statute enacted by voters as part of Proposition 21. Section 182.5 defines the following conduct as a type of conspiracy: "Notwithstanding subdivisions (a) or (b) of Section 182, any person who actively participates in any criminal street gang, as defined in subdivision (f) of Section 186.22, with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, as defined in subdivision (e) of Section 186.22, and who willfully promotes, furthers, assists, or benefits from any felonious criminal conduct by members of that gang

9

is guilty of conspiracy to commit that felony and may be punished as specified in subdivision (a) of Section 182." The Legislative Analyst's comments appeared in the ballot pamphlet, and stated that the measure would "*expand*[] the law on conspiracy *to include gang-related activities*." (Ballot Pamp., Primary Elec. (May 7, 2000) analysis by Leg. Analyst, p. 46, italics added.) The Court of Appeal concluded that "this is an implicit recognition that the general conspiracy statute could not be applied to section 186.22, subdivision (a) because a criminal street gang was itself a species of conspiracy." In this the court erred. Its interpretation would rely on the language of the ballot statement to *limit* existing law when the intended effect of the measure was to *expand* the law to encompass gang-related activities more broadly.

Section 182.5 created a new form of conspiracy that is distinct from the traditional understanding of the crime in five significant ways. First, under traditional conspiracy principles, when two or more defendants conspire to commit a substantive offense, they need not have previously known each other, have any ongoing association, or plan to associate in any way beyond the commission of the substantive offense.[5] Traditional conspiracy, then, encompasses a stand-alone agreement by former strangers to commit a single

---

[5] See *U.S. v. Feinberg* (7th Cir. 1941) 123 F.2d 425, 427 ("Since there was a general plan in which all of the defendants participated, it is immaterial when any of the parties entered or whether some of those participating were strangers to each other, [citation]; they were all engaged in a common unlawful purpose and each and all contributed their part to the criminal conspiracy."); cf. *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1000 ("When a conspiracy has formed, and a stranger to the conspiracy then associates himself with the conspirators, and with knowledge of the conspiracy joins the others in committing overt acts in furtherance of the unlawful purpose, then he is guilty as a member of the conspiracy.").

crime.  In order to violate section 182.5 and, thus, commit a "182.5 conspiracy," a defendant cannot be a complete stranger to the gang.  He or she must be an active gang participant with knowledge of other members' pattern of criminal gang activity.

Second, a traditional conspiracy encompasses an agreement to commit "any crime."  (§ 182, subd. (a)(1).)  Therefore, it is possible to conspire to commit a misdemeanor.  (See *People v. Proctor* (1993) 18 Cal.App.4th 1055, 1061 [noting a conspiracy to commit a misdemeanor under section 182 constitutes a "wobbler"]; cf. *People v. Prevost* (1998) 60 Cal.App.4th 1382, 1400-1402 [conspiracy to commit a misdemeanor governed by the three-year statute of limitations for felonies].)  A 182.5 conspiracy relates only to the commission of a felony.

Third, traditional conspiracy requires both the specific intent to agree, and specific intent to commit a target crime.  (*Morante, supra,* 20 Cal.4th at p. 416.)  A 182.5 conspiracy does not require any prior agreement among the conspirators to promote, further, or assist in the commission of a particular target crime.  Even without a prior agreement, an active and knowing gang participant who acts with the required intent to promote, further, or assist in the commission of a felony by other gang members can violate section 182.5.  That act of assistance or promotion replaces the required prior agreement to commit a crime that is ordinarily at the heart of a traditional conspiracy.

Fourth, traditional conspiracy liability attaches once an overt act is committed.  A 182.5 conspiracy requires the actual commission of felonious criminal conduct as either an attempt or a completed crime.

Fifth, section 182.5 brings within its ambit not only a gang member who promotes, furthers, or assists in the commission of a felony.  It also embraces an active and knowing participant who merely *benefits* from the crime's commission, even if he or she did not promote, further, or assist in the commission of that

11

particular substantive offense. This constitutes a substantial expansion of a traditional conspiracy application. The "one who benefits" provision recognizes that gang activities both individually and collectively endanger the public and contribute to the perpetuation of the gang members' continued association for criminal purposes. Due to the organized nature of gangs, active gang participants may benefit from crimes committed by other gang members. When such benefits are proven along with the other elements of the statute, section 182.5 permits those benefitting gang participants to be convicted of conspiracy to commit the specific offense from which they benefitted.

The creation of a new basis for conspiracy liability under section 182.5 does not reflect a legislative intent to *preclude* the use of section 186.22(a) as an object of a traditional conspiracy under section 182. Indeed, sections 182 and 182.5 are quite different provisions covering different kinds of conduct. If evidence reflects that an active and knowing gang participant, acting with the required intent, agrees with other gang members to commit a felony, and an overt act in furtherance of the plan has been committed, a prosecutor may charge a traditional conspiracy to commit the gang participation offense under section 182, even if the target offense is not ultimately committed. Rather than expressing an intent to limit the scope of section 182, the enactment of section 182.5 provided prosecutors additional flexibility in charging a different kind of conspiracy, consistent with the Legislative Analyst's statement that the new provision "expand[ed] the law on conspiracy to include gang-related activities." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 21 by Leg. Analyst, p. 46.)

The Court of Appeal suggested in a footnote that its decision would be the same whether a conspiracy to commit the gang participation offense was viewed as " 'an absurd redundancy' that results in unconstitutional vagueness" or a " 'conclusive legal falsehood.' " Recognizing such an offense would result in

12

neither. The Attorney General points to analogous federal statutes, such as the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.), which criminalizes the maintenance of a group engaging in racketeering activity, including the commission of various felonies such as murder, robbery, and extortion. Likewise, the Smith Act (18 U.S.C. § 2385) criminalizes the organization of a group advocating the violent overthrow of the government. Both criminalize conduct involving multiple participants and may involve predicate conspiracies. Both recognize, as a separate offense, a conspiracy to violate its provisions. (See 18 U.S.C. § 1962(d) [RICO conspiracy]; 18 U.S.C. § 2385 [Smith Act]; *U.S. v. Fernandez* (9th Cir. 2004) 388 F.3d 1199, 1259 ["It is a well-established principle of RICO law . . . that predicate racketeering acts that are themselves conspiracies may form the basis for a charge and eventual conviction of conspiracy under § 1962(d)."].)

Defendants contend recognizing the crime of conspiracy to commit the gang participation offense would be illogical. They argue that because conspiracy requires an agreement to commit every element of the target offense, and active gang participation requires knowledge of the gang's pattern of criminal gang activity, conspiracy to commit active gang participation would absurdly require that conspirators "agree" to have such knowledge. Defendants misconstrue the requirements of section 182, subdivision (a). "A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, *as well as the specific intent to commit the elements of that offense*, together with proof of the commission of an overt act . . . ." (*Morante, supra,* 20 Cal.4th at p. 416, italics added; see also *People v. Jurado* (2006) 38 Cal.4th 72, 120.) Conspirators must agree to the commission of a criminal act. They also have to possess certain kinds of knowledge and criminal intent. In other words, they agree to the act while possessing a given mens rea. It

13

would be imprecise to say that they "agree" to have a certain knowledge or mental state. Instead, to satisfy the elements of traditional conspiracy, they agree to an act, and they do so while possessing the required mental state.

Further, they need not *expressly* agree at all: "To prove an agreement, it is not necessary to establish the parties met and expressly agreed; rather, 'a criminal conspiracy may be shown by direct or circumstantial evidence that the parties positively or tacitly came to a mutual understanding to accomplish *the act* and unlawful design.' [Citation.]" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1025, italics added.) As explained below, defendants' agreement to commit the various gang shootings here exhibited their intent not only to commit those particular shootings, but also to actively participate in their gang.

Defendants' analogy to *People v. Iniguez* (2002) 96 Cal.App.4th 75 is inapt. The court there held that one could not conspire to commit *attempted* murder "because the crime of attempted murder requires a specific intent to actually commit the murder, while the agreement underlying the conspiracy pleaded to contemplated no more than an ineffectual act." (*Id*. at p. 79.) Stated another way, under a traditional conspiracy approach, one cannot conspire to *try* to commit a crime. An agreement to commit a crime is required, even if nothing more than an overt act is ultimately done. By contrast, the conspiracy to commit the gang participation offense does not contemplate an agreement to commit an ineffectual act. Under the traditional application of section 182, a conspiracy to violate section 186.22(a) requires that a defendant be an active and knowing gang participant and agree to willfully promote, further, or assist gang members in the commission of an intended target felony. Unlike *Iniguez*, there is no logical impossibility or absurdity in recognizing the crime of conspiracy to actively participate in a gang.

14

Defendants argue the so-called Wharton's Rule should preclude recognition of conspiracy to commit gang participation. The rule "owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale . . . ." (*Iannelli, supra,* 420 U.S. at p. 773.) The rule states "[w]here the cooperation of two or more persons is necessary to the commission of the substantive crime, and there is no ingredient of an alleged conspiracy that is not present in the substantive crime, then the persons necessarily involved cannot be charged with conspiracy to commit the substantive offense and also with the substantive crime itself." (*People v. Mayers* (1980) 110 Cal.App.3d 809, 815; see also *People v. Lee* (2006) 136 Cal.App.4th 522, 530.) Classically, Wharton's Rule applies to crimes that an individual could not commit acting alone. Wharton's Rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." (*Iannelli, supra,* 420 U.S. at p. 782.) "[T]he Rule is essentially an aid to the determination of legislative intent [and] must defer to a discernible legislative judgment." (*Id.* at p. 786.)

The presumption of Wharton's Rule has no application here. "The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. [Citation.] Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct." (*Iannelli, supra,* 420 U.S. at pp. 782-784, fns. omitted.) *Iannelli* concluded Wharton's Rule had no application to

the federal gambling statute at issue there: "The conduct proscribed by [18 United States Code section 1955] is significantly different from the offenses to which the Rule traditionally has been applied. Unlike the consequences of the classic Wharton's Rule offenses, the harm attendant upon the commission of the substantive offense is not restricted to the parties to the agreement. Large-scale gambling activities seek to elicit the participation of additional persons—the bettors—who are parties neither to the conspiracy nor to the substantive offense that results from it. Moreover, the parties prosecuted for the conspiracy need not be the same persons who are prosecuted for commission of the substantive offense. An endeavor as complex as a large-scale gambling enterprise might involve persons who have played appreciably different roles, and whose level of culpability varies significantly. . . . Nor can it fairly be maintained that agreements to enter into large-scale gambling activities are not likely to generate additional agreements to engage in other criminal endeavors." (*Iannelli, supra,* 420 U.S. at p. 784.)

Similar reasoning applies here. The immediate harm flowing from the gang participation offense is not limited to its participants. Indeed, an integral component of a *criminal* street gang is to commit felonies against others. (See § 186.22, subd. (f).) Like the large-scale gambling operation at issue in *Iannelli*, a criminal street gang also involves a network of participants with different roles and varying kinds of involvement. The gang at issue here had over 200 members who performed diverse functions. Further, it cannot be said that active gang participation is not likely to generate additional criminal agreements. To the contrary, the gang structure makes such agreements much easier and more likely. These circumstances provide no justification for applying the presumption of Wharton's Rule. (See *U.S. v. Nascimento* (1st Cir. 2007) 491 F.3d 25, 48-49 [rejecting application of Wharton's Rule to a RICO conspiracy]; *U.S. v. Marino*

16

(1st Cir. 2002) 277 F.3d 11, 39 [same]; see also *U.S. v. McNair* (11th Cir. 2010) 605 F.3d 1152, 1215-1216 [rejecting application of Wharton's Rule to a conspiracy to violate the federal bribery statute]; *U.S. v. Ruhbayan* (4th Cir. 2005) 406 F.3d 292, 300-301 [rejecting application of Wharton's Rule to a conspiracy to commit witness tampering and suborning perjury].)

### C. Elements of the Offense and Application to this Case

As noted, a conspiracy requires an intentional agreement to commit the offense, a specific intent that one or more conspirators will commit the elements of that offense, and an overt act in furtherance of the conspiracy. (*Morante, supra,* 20 Cal.4th at p. 416.) The gang participation offense requires (1) participation in a gang that is more than nominal or passive, (2) knowledge of the gang's pattern of criminal gang activity, and (3) the willful promotion, furtherance, or assistance in felonious conduct by gang members. (*Rodriguez, supra,* 55 Cal.4th at p. 1130.)

A conspiracy to commit the gang participation offense may be committed, as here, by already-active gang participants. "The gist of the crime of conspiracy . . . is the agreement or confederation of the conspirators to commit one or more unlawful acts . . . ." (*Braverman v. United States* (1942) 317 U.S. 49, 53.) "[W]hen a single agreement to commit one or more substantive crimes is evidenced by an overt act, . . . the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects." (*Ibid.*) "A single agreement to commit several crimes constitutes one conspiracy." (*United States v. Broce* (1989) 488 U.S. 563, 570-571.) " 'One agreement gives rise to only a single offense, despite any multiplicity of objects.' " (*People v. Lopez* (1994) 21 Cal.App.4th 1551, 1557.)

The evidence established that defendants were active participants in CBC. Dixon was a gang leader. Johnson, "Little Rifleman," was a shooter and drug dealer for the gang. Lee sold drugs, obtained cars, and participated in gang

shootings. There was also little question from defendants' conduct that they had the requisite knowledge of CBC's pattern of criminal gang activity, having committed much of it themselves. In this context, defendants agreed to commit various retaliatory shootings against rival gang members. Under these circumstances, once defendants agreed to commit a specific crime, for example, shooting a rival in retaliation, the agreement constituted a conspiracy to commit murder and assault. The agreement could also constitute a conspiracy to commit the conduct required to complete the gang participation offense. The agreement exhibited defendants' intent to commit all of the elements of substantive gang participation. Their agreement, coupled with their manifest participation in, and knowledge of, the gang's activities, constituted an agreement to further, promote or assist the felonious act of shooting rival gang members. Their agreement promoted commission of the shootings, making them more likely. Thus, just as a single agreement to kill someone with a firearm would encompass a conspiracy to commit both murder and assault with a firearm, a single agreement among active gang participants to commit a shooting with other gang members would additionally encompass a conspiracy to commit the gang participation offense. The conspiracy was completed once one of them committed an overt act toward the shooting.

*D. Conclusion*

The plain language of both sections 182 and 186.22(a) reflects no legislative intent to preclude a conviction for a traditional conspiracy to commit the gang participation offense. While section 186.22(a) makes no reference to the conspiracy statute, neither do statutes outlawing murder or robbery. Such mention is unnecessary because section 182, subdivision (a)(1) expressly encompasses the agreement to commit "any crime." The stated purposes of the STEP Act are entirely consistent with recognizing the crime of conspiracy to commit the

18

substantive gang participation offense.  A contrary legislative intent cannot be inferred from the electorate's enactment of section 182.5, which *expanded* liability by creating a new kind of criminal conspiracy in the gang context.  Defendants were active gang members, well aware of each other's active status and the gang's pattern of criminal gang activity.  Their agreement to commit the various shootings here constituted an agreement to commit the gang participation offense and, once an overt act was performed, all the elements of conspiracy to violate section 186.22(a) were satisfied.

## III.  DISPOSITION

We reverse the Court of Appeal's judgment and remand for further proceedings consistent with this opinion.


**CORRIGAN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Johnson

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 205 Cal.App.4th 594
**Rehearing Granted**

_____

**Opinion No.** S202790
**Date Filed:** July 18, 2013

_____

**Court:** Superior
**County:** Kern
**Judge:** Gary T. Friedman

_____

**Counsel:**

Susan D. Shors, under appointment by the Supreme Court, for Defendant and Appellant Corey Ray Johnson.

Joseph Shipp, under appointment by the Supreme Court, for Defendant and Appellant Joseph Kevin Dixon.

Sharon G. Wrubel, under appointment by the Supreme Court, for Defendant and Appellant David Lee, Jr.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Susan Lee, Acting Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Michael P. Farrell, Assistant Attorney General, Brian G. Smiley and Laura Wetzel Simpton, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sharon G. Wrubel
Post Office Box 1240
Pacific Palisades, CA  90272
(310) 459-4689

Laura Wetzel Simpton
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 322-3674