Filed 5/17/22  P. v. Lee CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID LEE, JR.,<br><br>    Defendant and Appellant. | F082341<br><br>(Kern Super. Ct. No. BF122135C)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

* Before Hill, P. J., Poochigian, J. and Detjen, J.

## INTRODUCTION

David Lee, Jr., Corey Ray Johnson, and Joseph Kevin Dixon (defendants) were charged and convicted of committing multiple offenses, including three counts of first degree premeditated murder (Pen. Code, § 187, subd. (a), § 189)[1] with multiple murder and gang special circumstances (§ 190.2, subds. (a)(3), (a)(22)).  They were each sentenced to three consecutive terms of life in prison without possibility of parole, and their murder convictions were affirmed on direct appeal.

In 2020, appellant Lee filed a petition for resentencing pursuant to section 1170.95 and alleged his murder convictions were based on the felony-murder rule and/or the natural and probable consequences doctrine, and he was not the actual killer.  The superior court denied Lee's petition, and he filed this appeal.

On appeal, Lee's appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record.  (*People v. Wende* (1979) 25 Cal.3d 436.)  We affirm.

## FACTS[2]

"Defendants Corey Ray Johnson, Joseph Kevin Dixon, and David Lee, Jr., were part of a 200-member Bakersfield gang called the Country Boy Crips (CBC).  CBC's

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] On May 18, 2021, this court deferred ruling on appellant Lee's request to take judicial notice of our unpublished opinion in his prior appeal, *People v. Johnson* (Sept. 25, 2013, F057736) 2013 WL 5366390.  We hereby grant that request.

The factual and procedural summaries are from the instant appellate record; this court's nonpublished opinion in Lee's direct appeal, *People v. Johnson* (April 26, 2012, F057736) 140 Cal.Rptr.3d 711; the California Supreme Court's opinion after granting review (*People v. Johnson* (2013) 57 Cal.4th 250); and this court's nonpublished opinion after remand, *People v. Johnson*, *supra*, F057736, 2013 WL 5366390.  Lee was a party in all three cases.

We recite the factual summary to provide context for the court's ruling and the parties' arguments.  As will be explained below, we will not rely on this factual summary, or the evidence introduced at Lee's jury trial, to resolve the issues presented in this appeal.  (See § 1170.95, subd. (d)(3).)

2.

rival gangs included the Eastside Crips and the Bloods. Dupree Jackson, a CBC member, testified for the prosecution under a grant of immunity. He was defendant Johnson's cousin and sold drugs for the gang. He described the gang's structure and the different roles members filled. Some sold drugs. Some patrolled the boundaries of the gang's territory to keep out enemies and outsiders. Some would 'hang out,' and some were 'pretty boys' who brought women into the gang. Others would 'ride with the guns' to seek out and kill enemies." (*People v. Johnson, supra*, 57 Cal.4th at p. 256.)

"Defendant Johnson sold drugs and was also a shooter for the gang with the moniker 'Little Rifleman.' Defendant Dixon was considered a gang leader because he had been to prison and had family ties to the gang. Defendant Lee would sell drugs, obtain cars, and drive for and 'ride' with other gang members." (*People v. Johnson, supra,* 57 Cal.4th at p. 256.)

"Testimony of several witnesses established that between March and August 2007, defendants were involved in various retaliatory shootings against perceived rivals. On March 21, 2007, members of the Bloods shot Lee. He and Johnson retaliated by shooting Bloods member Edwin McGowan. Lee was fired upon again the following day." (*People v. Johnson, supra*, 57 Cal.4th at p. 256.)

"All three defendants were then involved in a retaliatory shooting on April 19, 2007, outside an apartment in Eastside Crips territory. Vanessa Alcala and James Wallace, neither of whom was a gang member, were killed during the incident. Ms. Alcala was pregnant. Anthony Lyons was also shot but survived." (*People v. Johnson, supra,* 57 Cal.4th at p. 256.)

"On August 9, 2007, a fellow CBC member was shot and killed. Defendants and Jackson identified the shooter, armed themselves, and drove to the home of the shooter's father. They intended to retaliate but were scared away when a car drove by. Two days later, Johnson, accompanied by Dixon and Lee, shot Adrian Bonner, a Bloods associate,

paralyzing him.  Jackson related statements Johnson and Dixon made about the shootings." (*People v. Johnson*, *supra*, 57 Cal.4th at p. 256.)

"Johnson's girlfriend, Sara Augustin, also testified under a grant of immunity. She recounted various statements Lee and Johnson made about their involvement in the shootings.  DNA testing of clothing found near the apartment shooting scene was linked to defendants, primarily to Johnson.  Cell phone records reflected Dixon's and Lee's cell phones were at the location of the various shootings and were used to call each other or other CBC members before and after the events.  Various witnesses gave descriptions of the participants that matched all three defendants." (*People v. Johnson, supra*, 57 Cal.4th at p. 256.)

## PROCEDURAL BACKGROUND

The three defendants were tried and convicted after a joint jury trial "of three counts of first degree murder with multiple-murder [§ 190.2, subd. (a)(3)] and gang-murder [§ 190.2, subd. (a)(22)] special circumstances, two counts of attempted murder, shooting at an occupied vehicle, active gang participation, and conspiracy, as well as various enhancements." (*People v. Johnson, supra,* 57 Cal.4th at pp. 256–257 fns. omitted.)

"All defendants received three terms of life without the possibility of parole for the murder counts.  Dixon received an additional term of 238 years to life, while Johnson and Lee received additional terms of 196 years to life.  Those terms included a term of 25 years to life for conspiracy as to Johnson and Lee, and 50 years to life as to Dixon (25 years to life, doubled under the 'Three Strikes' law)." (*People v. Johnson, supra*, 57 Cal.4th at p. 257.)

**The First Appeal**

In a joint direct appeal filed by appellant Lee and codefendants Johnson and Dixon, this court affirmed the judgments with "some minor exceptions and

4.

modifications." (*People v. Johnson*, *supra*, 140 Cal.Rptr.3d at p. 715 [review granted, and opinion superseded by *People v. Johnson, supra*, 57 Cal.4th 250].)

In count 9, all defendants had been charged with "conspiracy to commit any or all of four separate criminal offenses – assault with a firearm (§ 245, subd. (a)(2)), murder (§ 187), robbery (§ 211), and active participation in a criminal street gang (§ 186.22, subd. (a)). No victim(s) or particular dates (other than March 2–August 22, 2007) were specified. The jury returned separate guilty verdicts, and separately found true one or more overt acts, with respect to each defendant and each object of the conspiracy. Defendants were each sentenced on count 9 for conspiracy to commit first degree murder." (*People v. Johnson, supra*, 140 Cal.Rptr.3d at pp. 715–716.)

On appeal, we reversed defendants' convictions for "conspiracy to commit a violation of section 186.22, subdivision (a), active participation in a criminal street gang," and agreed with their argument that it was "an invalid crime because a violation of section 186.22 is itself a conspiracy, and 'a conspiracy to commit a conspiracy is a nonsensical redundancy that results in unconstitutional vagueness.' " (*People v. Johnson, supra*, 140 Cal.Rptr.3d at p. 716.)

**The California Supreme Court's Decision**

The California Supreme Court granted the People's petition for review "to decide whether one may conspire to actively participate in a criminal street gang. One can. When an active gang participant possessing the required knowledge and intent agrees with fellow gang members to commit a felony, he has also agreed to commit the gang participation offense. That agreement constitutes conspiracy to commit the offense of active gang participation and may be separately charged once a conspirator has committed an overt act." (*People v. Johnson, supra*, 57 Cal.4th at p. 255.) The court remanded for further appropriate proceedings. (*Id.* at p. 267.)

5.

**Decision on Remand**

On remand, this court again affirmed the convictions and sentences for first degree murder with special circumstances, with minor corrections. In light of the Supreme Court's ruling, we affirmed defendants' convictions for conspiring to actively participate in a criminal street gang. (*People v. Johnson* (Sept. 25, 2013; F057736) 2013 WL 5366390 at pp. *160, *167.) We reversed defendants' convictions for conspiracy to commit robbery because it was not supported by a valid overt act. (*Id*. at p. *155.)

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of Lee's petition filed in 2020, for resentencing on his murder convictions and sentences of life without parole, pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437).

Senate Bill 1437 became effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)[3]

---

[3] As amended, section 189, subdivision (f) states an exception that allows "individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or reasonably should know) these facts." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 99.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage,

'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' " (*Id*. at p. 963, italics added in original.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

*Lewis* further held that after appointing counsel, the trial court may rely on the record of conviction to determine whether the prima facie showing has been made in order "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations

8.

were proved.  If so, the court must issue an order to show cause." ' "  (*Lewis, supra*, 11 Cal.5th at p. 971.)

" 'However, if the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Lewis, supra*, 11 Cal.5th at p. 971, italics added.)

"Appellate opinions … are generally considered to be part of the record of conviction.  [Citation.]  However, as we cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 457], the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'  [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' "  (*Lewis, supra*, 11 Cal.5th at p. 972.)

"[T]here is no categorical bar to consulting the record of conviction at the prima facie stage."  (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.)  "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)."  (*Id.* at p. 972.)

The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law.  (*Lewis, supra*, 11 Cal.5th at p. 966.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, if the court failed to appoint counsel or violated the petitioner's statutory rights under section 1170.95, and the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' "  (*Lewis, supra*, 11 Cal.5th at p. 974.)

Therefore, to demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020-2021 Reg. Sess.; Stats. 2021, ch. 551, § 1 (Senate Bill 775).) As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a), italics added.)

The amendments also codified the holding in *Lewis* that "[u]pon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After the petition is filed, the People shall file a response and the petitioner may serve a reply. (*Id*. at subd. (c).)

After the parties have the opportunity to submit briefs, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner makes the prima facie showing, "the court shall issue an order to show cause." (*Ibid*.) If the court declines to issue an order to show cause, "it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.)

If an order to show cause is issued, "the court shall hold a hearing to determine" whether to vacate the petitioner's conviction, recall the sentence, and resentence petitioner. (§ 1170.95, subd. (d)(1).) At the hearing, the prosecution has the burden to

prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

"At the hearing to determine whether the petitioner is entitled to relief … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court *may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion.* However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022, italics added.)

## LEE'S SECTION 1170.95 PETITION

On June 8, 2020, Lee filed, in pro. per., a petition for resentencing under section 1170.95, and requested appointment of counsel.

The petition was supported by Lee's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189 because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual

11.

killer in the commission of first degree murder, and he was not a major participant and did not act with reckless indifference.

The court appointed counsel to represent Lee.

**The People's Opposition**

On July 30, 2020, the People filed opposition to Lee's petition, supported by the factual statement from this court's opinion on direct appeal about the shootings on April 19, 2007.

The People argued Lee was ineligible for resentencing as a matter of law because he was not prosecuted under the felony-murder rule or the natural and probable consequences doctrine, and no underlying felonies were alleged. "This was a straightforward actual malice, premeditated murder prosecution and conviction."

The People further argued Lee was also ineligible for relief based on the jury's true findings on the special circumstances: "The true finding on the murder for the benefit of a criminal street gang, … §190.2(A)(22) required that each petitioner acted with the specific intent to kill. [¶] The appellate court in this case found that the jurors in this case necessarily found the defendants acted witfully with intent to kill. [¶] The jury was also instructed that in order to find a multiple-murder special circumstance as to a non-killer, they had to find the defendant acted with intent to kill. Because the jurors found all multiple-murder special circumstances to be true as to all defendants, the jurors necessarily determined each defendant had the specific intend to kill. The verdict regarding the special circumstance clearly shows that Petitioner acted with the specific intent to kill."

**Lee's Reply**

On November 2, 2020, Lee filed a reply to the opposition, and argued he made a prima facie showing based on this court's opinion in the direct appeal, that the jury was instructed on the natural and probable consequences doctrine as it related to conspiracy.

**The Court's Denial of the Petition**

On December 15, 2020, the superior court filed a minute order and summarily denied Lee's section 1170.95 petition. It did not conduct a hearing or give reasons why it did not issue an order to show cause.

On January 28, 2021, Lee filed a timely notice of appeal.

## DISCUSSION

As noted above, Lee's counsel filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on April 9, 2021, we invited Lee to submit additional briefing. He did not do so.

Lee's petition was denied before the decision in *Lewis* and Senate Bill 775's amendments to section 1170.95, but the amended statute applies since his case is not yet final. The court appointed counsel and allowed for briefing, as required by the amended version of section 1170.95, subdivisions (b) and (c), but it did not conduct a hearing or give a statement of reasons why it did not issue an order to show cause, and it may have engaged in premature factfinding at the prima facie stage. (§1170.95, subd. (c).)[4] We may affirm the denial of the petition if Lee was not prejudiced by the statutory errors in this case. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.)

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent the statutory error, his petition would not have been summarily denied

---

[4] The opinion from appellant's direct appeal is part of the record of conviction that may be considered to determine whether the petitioner has made a prima facie showing of resentencing eligibility. (*Lewis, supra*, 11 Cal.5th at p. 972.) However, the role of the appellate opinion is circumscribed. The factual summary contained in an appellate opinion is not considered admissible evidence regarding a petitioner's resentencing eligibility (§ 1170.95, subd. (d)(3)), and the court may not engage in factfinding based on the appellate opinion at the prima facie stage (*Lewis,* at p. 972).

13.

without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson, supra,* 46 Cal.2d at p. 836.) The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.)

**The Special Circumstance**

We find any statutory error is not prejudicial based on this court's discussion of the jury instructions that were given in this case. A petitioner is ineligible for resentencing if he was the actual killer, acted with the intent to kill or malice aforethought, or was a major participant in the underlying felony who acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *People v. Gentile, supra*, 10 Cal.5th at p. 842.)

In this case, the jury found true the multiple-murder special circumstances alleged pursuant to section 190.2, subdivision (a)(3) as to each murder charge, that required the jury to find either that Lee was the actual killer, or that he acted with intent to kill in aiding and abetting the murders. (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 45.) As this court explained in the opinion in the direct appeal, "[t]he jury … was instructed that defendants were being prosecuted for first degree murder under two theories: one, that the murders were willful, deliberate, and premeditated; and two, that the murders were committed by lying in wait." (*People v. Johnson, supra*, 2013 WL 5366390, at p. *142.) "Jurors were also instructed on transferred intent, to wit, if the defendant intended to kill one person but by mistake or accident killed another person, the crime (if any) was the same for the unintended killing as for the intended killing." (*Ibid.*)

"With respect to the multiple-murder special circumstance, jurors [in this case] were instructed that if they found a defendant was guilty of first degree murder but was not the actual killer, *they had to find he acted with the intent to kill in order to find the special circumstance true.*" (*People v. Johnson, supra*, 2013 WL 5366390, at p. *142, italics added.) As this court explained, the jurors in this case "necessarily found

14.

defendants acted willfully with intent to kill; they were instructed, pursuant to CALCRIM No. 521, that a defendant acted willfully if he intended to kill; and, pursuant to CALCRIM No. 702, that, *in order to find a multiple-murder special circumstance as to a nonkiller, they had to find the defendant acted with the intent to kill*.  Because jurors found all multiple-murder special circumstances true as to all defendants, jurors necessarily determined each defendant had the specific intent to kill." (*People v. Johnson, supra*, 2013 WL 5366390, at p. *144, italics added.)

"The People did not proceed on a natural-and-probable-consequences theory of liability insofar as aiding and abetting was concerned." (*People v. Johnson, supra*, 2013 WL 5366390, at p. *145.)  "[T]he trial court never mentioned the natural-and-probable-consequences doctrine in conjunction with aiding and abetting liability, never identified the specific circumstances under which a defendant might be found guilty of other crimes, and never directed the jury to make any sort of findings on the issue.  … [W]hen it explained aiding and abetting and conspiracy theories of liability to the jury, the prosecutor did not even discuss, let alone rely on, the natural-and-probable-consequences doctrine in the context of aiding and abetting." (*People v. Johnson, supra*, 2013 WL 5366390, at p. *146.)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.