# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

PEDRO LOPEZ,

Defendant and Appellant.

S261747

Fifth Appellate District
F076295

Tulare County Superior Court
VCF325028TT

April 7, 2022

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Groban, Jenkins, and Miller* concurred.

---

\* Associate Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. LOPEZ

S261747


Opinion of the Court by Kruger, J.


Defendant Pedro Lopez was convicted of conspiracy to commit home invasion robbery in violation of Penal Code section 182, the general conspiracy statute. The question in this case concerns the appropriate sentence for the crime. Section 182 provides that if two or more persons conspire to commit a felony, "they shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony." (Pen. Code, § 182, subd. (a).) This means that a person convicted of conspiring to commit home invasion robbery ordinarily faces three, six, or nine years in prison, just as if that person had been found guilty of a completed home invasion robbery. (*Id.*, § 213, subd. (a)(1)(A).) But the trial court in this case instead sentenced Lopez to an indeterminate term of 15 years to life under Penal Code section 186.22, subdivision (b)(4) (section 186.22(b)(4)). That provision prescribes indeterminate life terms for specified felonies, including "home invasion robbery, in violation of subparagraph (A) of paragraph (1) of subdivision (a) of Section 213" (§ 186.22(b)(4)(B)), when those felonies are found to be gang-related.

We granted review to consider whether Lopez was properly sentenced to an indeterminate life term under section 186.22(b)(4), even though Lopez was convicted of the crime of conspiracy and not completed home invasion robbery. The Court of Appeal answered yes. It understood the conspiracy statute and this court's decision in *People v. Athar* (2005) 36

Cal.4th 396 (*Athar*) to instruct that in a felony conspiracy case, a trial court ordinarily must apply all sentence enhancements or alternate penalties that would have applied to the completed offense. Because section 186.22(b)(4) does not contain an express statement forbidding an indeterminate life term for a conspiracy conviction, the Court of Appeal concluded Lopez's life sentence was proper.

We reach a different conclusion. Neither the conspiracy statute nor decision in *Athar* requires an express statement forbidding imposition of sentence enhancements, alternate penalties, or other additional punishment to conspiracy convictions. It is enough if the relevant statutes reflect a discernable intent to reserve the additional punishment for completed crimes. Here, although section 186.22(b)(4) does not say so expressly, the most natural reading of the provision reflects such an intent. Because Lopez was convicted of conspiracy to commit home invasion robbery and not the completed crime, we reverse the judgment of the Court of Appeal and remand Lopez's case for resentencing.

## I.

In 2015, law enforcement agencies investigated the activities of Norteño criminal street gang members in Tulare County. As part of the investigation, authorities conducted live surveillance of certain high-ranking gang members and tapped their telephones. On August 24 and 25, agents were watching and listening as several of these gang members planned two back-to-back home invasion robberies to take place in Visalia. Lopez, a member of a Norteño subset in Fresno County, agreed by phone and text message to help recruit for and participate in these robberies.

In preparation, Lopez and other gang members procured cars, weapons, and other equipment; scoped out the locations they intended to target; and planned a coordinated attack. On the night of August 25, the group divided into two cars and set out toward the targeted homes. One gang leader texted another, " ' "We in motion. I'll update you soon." ' " Moments later, the police intervened. Police arrested five individuals, including Lopez.

A jury found Lopez guilty of two counts of conspiracy to commit home invasion robbery[1] (Pen. Code, §§ 182, subd. (a)(1) [traditional conspiracy], 211 [robbery], 213, subd. (a)(1)(A) [punishment for home invasion robbery]), criminal street gang conspiracy to commit home invasion robbery (*id.*, § 182.5 [criminal street gang conspiracy]), and attempted home invasion robbery (*id.*, §§ 664 [attempt], 211, 213, subd. (a)(1)(A)). The jury also found all of these crimes to be gang-related within the meaning of Penal Code section 186.22, subdivision (b)(1) and section 186.22(b)(4).[2] The court sentenced

---

[1] The term "home invasion robbery" is a commonly used shorthand for a first degree robbery offense in which the defendant, "voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house" or other habitation. (Pen. Code, § 213, subd. (a)(1)(A); see § 186.22(b)(4)(B).) Though the crime is perhaps more accurately described as "robbery in concert in a home" (*People v. Jones* (2012) 54 Cal.4th 350, 367 (conc. opn. of Werdegar, J.)), we use the more common shorthand, as it is the term used in section 186.22(b)(4)(B), the sentencing provision at issue in this case.

[2] We are likewise using "gang-related" as a shorthand for the showing required by statute: namely, that the defendant has committed the current felony "for the benefit of, at the direction of,

Lopez to an indeterminate term of 35 years to life for conspiracy to commit home invasion robbery, consecutive to a determinate term of 19 years for attempted home invasion robbery. The sentence for the conspiracy conviction consisted of 15 years to life as a so-called alternate penalty under section 186.22(b)(4)(B), doubled for a prior strike, with an additional five years for a prior serious felony conviction under Penal Code section 667, subdivision (a). All other counts and enhancements were stayed or ordered to be served concurrently.

Lopez appealed. The appeal was partially successful: The Court of Appeal reversed the second count of conspiracy for insufficient evidence. But Lopez was unsuccessful in his efforts to persuade the Court of Appeal that the trial court erred in sentencing him to an indeterminate life term on his conspiracy conviction under section 186.22(b)(4). The Court of Appeal agreed with Lopez that the language in that provision unambiguously applies to only the enumerated offenses, which do not include conspiracy. But it understood this court's decision in *Athar, supra,* 36 Cal.4th 396 to mean it must "presume any intent to exclude conspiracy liability from the purview of section 186.22, subdivision (b)(4)(B) would be expressly stated therein, which it is not." (*People v. Lopez* (2020) 46 Cal.App.5th 505, 529.) The court thus upheld Lopez's indeterminate life term on the conspiracy count.

We granted review.

---

or in association with a criminal street gang." (Pen. Code, § 186.22, subd. (b)(1).)

## II.

The crime of conspiracy " 'is an inchoate offense, the essence of which is an agreement to commit an unlawful act.' " (*People v. Johnson* (2013) 57 Cal.4th 250, 258 (*Johnson*).) Much as with other inchoate offenses, the law imposes liability even when agreement never comes to fruition and the agreed-to unlawful act never occurs. To complete the crime of conspiracy, one of the conspirators must commit an overt act in furtherance of the agreement. But because " 'it is the agreement, not the overt act, which is punishable[,] . . . the overt act need not amount to a criminal attempt and it need not be criminal in itself.' " (*Id.* at p. 259.)

When California's general conspiracy statute was enacted in 1872, conspiracy was a misdemeanor punishable by imprisonment in the county jail not exceeding one year, or by a fine not exceeding $1,000, or both. (1872 Pen. Code, § 182.) In 1919, the Legislature amended the statute to provide that, if two or more persons conspire to commit a felony, "they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony . . . ." (Pen. Code, former § 182, as amended by Stats. 1919, ch. 125, § 1, p. 171.) This sanctions clause remains largely unchanged today. (Pen. Code, § 182, subd. (a) ["punishable in the same manner and to the same extent as is provided for the punishment of that felony"].)**3**

---

**3** This language applies to conspiracy to commit any felony, other than crimes against certain high-ranking officials (see § 182(a)(6)), which are instead punishable by imprisonment for five, seven, or nine years.

At the time the Legislature enacted the language, its application was relatively straightforward. But over the course of the following century, the Legislature and voters enacted a number of sentence enhancements and alternative sentencing schemes that have raised new questions about the operation of the general instructions in section 182 for the punishment of conspiracy.

All parties before us agree that under Penal Code section 182, subdivision (a) (section 182(a)), a person who conspires to commit a felony is ordinarily subject to the same base term of imprisonment as a person who completes that target offense. Here, for example, the parties agree that, absent the gang enhancement, Lopez would be subject to imprisonment for a term of three, six, or nine years for his conspiracy conviction — the same term of imprisonment prescribed for home invasion robbery. (Pen. Code, § 213, subd. (a)(1)(A).)

The question in this case concerns the punishment for conspiracy to commit offenses that, if completed, would be subject to additional or more severe punishment based on additional findings concerning the manner or circumstances in which the crime is committed. Such punishment may be provided in provisions creating sentence enhancements or, as relevant here, alternate penalties. For simplicity's sake, we have sometimes referred to these types of statutes as "special penal provision[s]."[4] (*Athar, supra,* 36 Cal.4th at p. 402.) The

---

[4] As we have previously explained, a sentence enhancement adds " 'an additional term of imprisonment to the base term,' " while an alternate penalty like section 186.22(b)(4) " 'provides for an alternate sentence when it is proven that the underlying offense

question is, in short, "to what extent a court can attach a special penal provision" like section 186.22(b)(4) "to conspiracy rather than to the underlying crime itself." (*Athar*, at p. 402.)

We have seen similar questions before. Because our precedent is central to the parties' dispute here, we describe the opinions in some depth.

In *People v. Hernandez* (2003) 30 Cal.4th 835 (*Hernandez*), we considered the prescribed punishment for the crime of conspiracy to commit murder. The defendant in that case had been convicted of both murder and conspiracy to commit murder, and the jury had found true a special circumstance allegation that both the murder and conspiracy to commit murder had been committed for financial gain. (*Id.* at p. 864.)[5] Based on that true finding, the defendant was sentenced to life without possibility of parole on the conspiracy conviction. We vacated the sentence, concluding that the special penal provision at issue — the special circumstance authorizing the life without parole sentence — applied only to convictions for the completed crime, not to convictions for conspiracy to commit murder. (*Hernandez*, at p. 878.)

We began our inquiry by laying out the relevant statutory background. In addition to the basic sentencing directive that

---

has been committed for the benefit of, or in association with, a criminal street gang.' " (*People v. Jones* (2009) 47 Cal.4th 566, 576.) Both types of provisions differ from substantive offenses in that they do not " 'define or set forth elements of a new crime.' " (*Ibid.*)

[5] In a separate part of the opinion, we vacated the defendant's death sentence on the murder count because of significant errors at the penalty phase of the trial.

conspiracy shall be punished in the same manner and to the same extent as the target felony, the conspiracy statute specifies that when two or more persons conspire to commit murder, "the punishment shall be that prescribed for murder in the first degree." (§ 182(a).) Penal Code section 190, subdivision (a), enacted as part of the 1978 death penalty initiative (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978)), outlined three possible punishments for first degree murder: death, life in prison without parole, or 25 years to life in prison. The two most severe punishments — death or life without parole — could be imposed only if one or more special circumstances had been found true, including the financial gain special circumstance in Penal Code section 190.2. We concluded that these punishments could not be applied to a conviction of conspiracy to commit murder, as opposed to the completed crime, notwithstanding the presence of special circumstances.

The question, as we described it, was "[w]hether the special circumstances in [Penal Code] section 190.2 apply to the crime of conspiracy to murder," which depended on the legislative intent underlying the 1978 ballot initiative. (*Hernandez*, *supra*, 30 Cal.4th at p. 865.) Looking first to the text, we found nothing to suggest that voters intended for the death-qualifying special circumstances to apply to the crime of conspiracy to commit murder, or, for that matter, to any other crime other than murder itself. (*Id.* at pp. 866–867.) On the contrary, we noted, "[S]ubdivision (a) of [Penal Code] section 190.1 states: '*If the trier of fact finds the defendant guilty of first degree murder*, it shall at the same time determine the truth of all special circumstances charged,' " which strongly implied that the "special circumstances may be charged and found true only

8

as to the crime of murder." (*Hernandez*, at p. 866.) We similarly found nothing in the ballot materials to suggest voters intended the special circumstances and their attendant penalties of death or life without possibility of parole to apply to conspiracy to commit murder, as opposed to the completed crime. (*Ibid.*)

We found further support for our conclusion in the canon of constitutional avoidance. In 1978, we explained, it was unclear whether the federal Constitution permitted imposing the death penalty for crimes that did not take human life. (See *Coker v. Georgia* (1977) 433 U.S. 584 [invalidating death sentence for rape of an adult victim]; *Eberheart v. Georgia* (1977) 433 U.S. 917 [invalidating death sentence for aggravated kidnapping].) We presumed that the electorate intended to avoid significant questions about the constitutionality of the new California death penalty law by restricting capital punishment to the completed crime of first degree murder, rather than authorizing the death penalty for failed conspiracies that did not result in the taking of life. (*Hernandez, supra*, 30 Cal.4th at p. 867.)

We next considered the practical implications of interpreting the special circumstances statute to apply to conspiracy. We explained that at the time the voters enacted the 1978 death penalty initiative, the penalty for most forms of *attempted* willful and premeditated murder was five, six, or seven years (although a legislative amendment increasing the punishment to five, seven, or nine years was set to go into effect on Jan. 1, 1979). (*Hernandez, supra*, 30 Cal.4th at pp. 867–868, citing Pen. Code, former § 664, subd. (1), as amended by Stats. 1978, ch. 579, § 27, p. 1986; Stats. 1978, ch. 1166, § 2, p. 3771.) We acknowledged that conspiracy is generally punished more

severely than attempt: while conspiracy is punishable to the same extent as the completed crime (§ 182(a)), attempt is generally punishable for one-half the term of the imprisonment prescribed for the completed crime (Pen. Code, § 664, subd. (a)). But we considered it "unlikely the voters intended to allow the death penalty for a conspiracy to murder, which requires only a conspirator's overt act in furtherance of the murderous plot ([*id.,* ]§ 184), at a time when the maximum punishment for attempted willful and premeditated murder, which requires a direct, though ineffectual, premeditated murderous act ([*id.,* ]§ 21a), was five, seven, or nine years in prison." (*Hernandez*, at p. 868.) This large discrepancy between the punishment for conspiracy and attempt supported our conclusion that the special circumstances in Penal Code section 190.2 do not apply to conspiracy to commit murder. (*Hernandez*, at p. 868.)

Finally, our opinion in *Hernandez* alluded to the rule of lenity. That rule, we explained, states "that when 'two reasonable interpretations of the same provision stand in relative equipoise, i.e., . . . resolution of the statute's ambiguities in a convincing manner is impracticable,' we construe the provision most favorably to the defendant." (*Hernandez, supra,* 30 Cal.4th at p. 869.) We found that the 1978 death penalty law "is most plausibly construed as not authorizing the charging of special circumstances for the crime of conspiracy to commit murder," such that there was no need to rely on the rule of lenity. (*Ibid.*) But we went on to note that "even if such a construction were no more plausible than the alternative, the rule of lenity would add decisive weight in favor of that construction." (*Id.* at pp. 869–870.)

We returned to the issue of conspiracy sentencing two years later in *Athar*, *supra*, 36 Cal.4th 396. In *Athar*, a jury convicted the defendant under section 182(a) of conspiring to conduct money laundering transactions, in violation of Penal Code section 186.10, subdivision (a). Defendants' coconspirators were convicted of violating section 186.10, subdivision (a), based on completed transactions. The jury determined the value of the transactions was in excess of $2.5 million, which carried a four-year enhancement. (Pen. Code, § 186.10, subd. (c)(1)(D).) The defendant argued that the four-year enhancement should apply only to convictions for the completed money laundering offense, not to his conspiracy conviction. We disagreed.

As an initial matter, we explained that section 182(a), by its terms, is naturally read to incorporate sentence enhancements as well as the base term for the target offense. (*Athar*, *supra*, 36 Cal.4th at pp. 401–402; see *id.* at pp. 404–405.) But the inquiry did not end there; we acknowledged that our decision in *Hernandez* had not considered the matter resolved by section 182(a) standing alone, but instead looked to the statute governing special circumstances and ultimately concluded that statute was not meant to apply to conspiracy convictions.

Our opinion in *Athar* distinguished the money laundering statute from the statute in *Hernandez*, explaining that the available interpretive tools pointed in the opposite direction from that case. Among other things, we explained that the purpose of the amendment adding the enhancements was to more effectively deter and punish money laundering. "Because the money laundering process typically involves more than one person, and often large criminal networks, it is reasonable for

us to find that the enhancements . . . were intended to control large-scale laundering and the conspiracies that necessarily underlie the criminal operation." (*Athar, supra,* 36 Cal.4th at p. 404.) We also distinguished the money laundering statute from Health and Safety Code section 11370.4, subdivision (a), which expressly provides for enhancements where a person has been " 'convicted of a violation of, *or of a conspiracy to violate,*' " certain drug trafficking offenses. (*Athar,* at p. 405, italics added.) We explained that the Legislature added the italicized language in a later amendment, possibly based on the belief that "it was necessary to amend the statute in order to apply the statutory enhancements to conspirators because those enhancements had been limited specifically to persons convicted of the target offense." (*Ibid.*) We declined to place any weight on the absence of similar language in the money laundering statute, noting that the enhancement provision does not refer to individuals " 'convicted' of" that statute, but instead refers to individuals " 'punished under' " that statute. (*Ibid.*)

Finally, we noted that unlike in *Hernandez,* our interpretation neither raised significant constitutional concerns nor resulted in any disparity between the punishment of conspiracy and attempt; indeed, our interpretation ensured that these two inchoate offenses would receive the same punishment. (*Athar, supra,* 36 Cal.4th at p. 404.)

The parties disagree about the lessons to be learned from *Athar,* and *Hernandez* before it. The Attorney General argues, and the Court of Appeal agreed, that *Athar* means that when an enhancement or alternate penalty would otherwise apply to a completed target offense, it must be applied to a conspiracy conviction unless the statute expressly directs otherwise. So

here, even though the Court of Appeal found that the alternate penalty in section 186.22(b)(4)(B) unambiguously applied to completed home invasion robbery and not conspiracy, it considered it dispositive that section 186.22(b)(4)(B) does not explicitly exclude conspiracy from its reach. In Lopez's view, this argument overreads *Athar*. But if that is wrong, Lopez argues, then *Athar* is wrong, cannot be reconciled with *Hernandez,* and should be overruled.

We agree with Lopez that *Athar*, properly understood, does not stand for the proposition for which the Attorney General and Court of Appeal have read it. *Athar* does make clear that section 182(a)'s instruction that conspiracy to commit a felony is "punishable in the same manner and to the same extent as is provided for the punishment of that felony" means a conspiracy sentence can encompass not only the base term but also sentence enhancements. (*Athar*, *supra*, 36 Cal.4th at p. 405 [asserting that the meaning of § 182(a) is "plain" in this respect and "does not require additional legislative clarity"].) But *Athar* makes equally clear that the sentencing inquiry does not begin and end with section 182(a); the terms of the enhancement or alternate penalty also matter. *Hernandez* illustrated that point in giving effect to voters' apparent intent to reserve the most serious punishments under the 1978 death penalty initiative for individuals convicted of completed murder; *Athar* then employed the same "statutory construction principles we addressed in *Hernandez*" to reach a different conclusion about Penal Code section 186.10 money laundering enhancements. (*Athar*, at p. 404.)

Though the Attorney General suggests otherwise, we did not change our approach in *People v. Ruiz* (2018) 4 Cal.5th 1100

(*Ruiz*).  In *Ruiz* we considered whether laboratory and drug program fees for persons convicted of certain enumerated drug crimes applied to persons convicted of conspiracy to commit one of those offenses.  Without expressly addressing whether the fee statutes at issue were properly understood to apply to conspiracy crimes, we instead focused on whether the fees constituted "punishment" within the meaning of section 182(a).  Because the fees were meant as punishment, we held that the fees applied to a person convicted of conspiracy.  The Attorney General reads this as an implicit acknowledgment that section 182(a) alone controls the inquiry, but we acknowledged no such thing.  We focused on section 182(a) because the application of section 182(a) was the only question put to us; no one disputed that the fee statutes, properly interpreted, were meant to apply to persons convicted of conspiracy as well as completed offenses.  The same was not true in *Hernandez* or *Athar*, where we carefully considered the intended reach of the special penal provisions at issue, and the same is not true here.

An approach that looks beyond the basic instructions in section 182(a) only makes sense, since the sentence in any given conspiracy case depends on both section 182(a) and the sentencing law or laws that specify the punishment for particular crimes.  Nothing in section 182(a) indicates that the general instructions it contains are designed to override all other applicable law.  (Cf., e.g., *In re Greg F.* (2012) 55 Cal.4th 393, 406 ["When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law' "].)  And as *Hernandez* demonstrates, the Legislature and voters sometimes write

enhancement statutes and other penal provisions that are aimed exclusively at increasing the punishment for completed offenses. In such cases, the legislative body has determined that punishment should be added for the manner or circumstances in which an offense is completed, but that the same punishment should not be added for the manner or circumstances in which individuals conspire, but ultimately fail, to commit a particular target offense. When legislators make such a determination, we give effect to their choices as providing more specific guidance than section 182(a) about whether a particular enhancement or other penal provision should be included as part of the punishment for the conspiracy offense. (See, e.g., *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.)

Indeed, the Attorney General does not seriously dispute the point that a court must consider the terms of the special penal provision at issue before deciding whether the provision applies to a conspiracy conviction. His argument is instead that, to override the general rule that section 182(a) embraces enhancements and other similar penalty provisions, the special penal provision must expressly so provide. We are unpersuaded.

We acknowledge there is some language in *Athar* that can be read to suggest an express statement rule of the kind the Attorney General advocates. For example, *Athar* signals general agreement with a Court of Appeal opinion it describes as holding that the money laundering enhancement statute "requires the enhancement because it does not specifically prohibit it." (*Athar, supra*, 36 Cal.4th at p. 401.) But in the end, neither the substantive analysis in *Athar* nor our prior decision in *Hernandez* supports this sort of rule.

For one thing, if an express statement were required to overcome the general rule of section 182(a) with respect to enhancements and alternate penalties, then *Hernandez* presumably would have come out differently. After all, nothing in the 1978 death penalty statute expressly stated that the penalties for special circumstance murder are inapplicable in conspiracy cases. The Attorney General argues *Hernandez* is distinguishable because it raised constitutional considerations not present here, concerning the imposition of the death penalty for a crime not involving the killing of another. This is true but beside the point, since *Hernandez* was not a constitutional decision; *Hernandez* instead invoked constitutional considerations in an effort to understand the meaning of the statute. *Athar* did not purport to overrule *Hernandez* in this respect, but likewise employed the usual tools of statutory interpretation to reach its conclusions about the intended reach of amount-based enhancements in money laundering cases.

In any event, even looking beyond precedent, we see no sound reason why an express statement should be required in this context. In cases concerning the presumption favoring retroactivity of ameliorative changes to the criminal law, we have said that case law "do[es] not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*People v. Conley* (2016) 63 Cal.4th 646, 656–657.) The same holds true here. To instruct that enhancements or other additional penalties should not apply to individuals who conspire, but ultimately fail, to complete a

particular crime, legislators need not express their intent in a particular form; the legislative body need only demonstrate its intent " 'with sufficient clarity that a reviewing court can discern and effectuate it.' " (*Id.* at p. 657; see *id.* at p. 656.) In other words, to answer the question in this case, we simply employ the usual tools of statutory interpretation without requiring an explicit statement of legislative intent to reserve additional punishment for individuals who have completed a crime, as opposed to those who have conspired to do so.

To do otherwise would force courts to err on the side of more punishment unless a statute unambiguously forbids it. Such an approach might have the virtue of simplicity. But it carries with it the greater vice of imposing more punishment — sometimes dramatically more — even when ordinary principles of statutory interpretation tell us that more punishment is not what the Legislature or voters intended. The sounder approach is simply to read the special penal provision as we would any other statute, using ordinary tools of statutory construction to determine whether the legislative body intended for the penalty to apply to individuals convicted of conspiracy or instead intended to reserve added punishment for individuals convicted of completed crimes.

## III.

With these principles in mind, we turn our attention to the alternate penalty provision in section 186.22(b)(4)(B). The Legislature enacted Penal Code section 186.22 as part of the California Street Terrorism Enforcement and Prevention Act (STEP Act), a statute enacted "for the express purpose of eradicating criminal activity by street gangs." (*People v. Loeun* (1997) 17 Cal.4th 1, 4, citing Pen. Code, former § 186.21; see

Stats. 1988, ch. 1242, § 1, pp. 4127–4129 [enacting Pen. Code, § 186.22]; Stats. 1989, ch. 930, § 5.1, pp. 3253–3255 [reenacted in the Omnibus Motor Vehicle Theft Act of 1989].)[6]  The STEP Act created a new substantive offense of active participation "in a criminal street gang" (Pen. Code, § 186.22, subd. (a)), as well as a sentence enhancement for felonies committed "for the benefit of, at the direction of, or in association with a criminal street gang" (*id.*, § 186.22, subd. (b)(1)).  (See *People v. Valencia* (2021) 11 Cal.5th 818, 829.)

Approximately a decade later, voters passed Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998, which amended section 186.22 in various respects. (Primary Elec. (Mar. 7, 2000).)  Proposition 21 created a new crime of gang conspiracy, which punishes "any person who actively participates in any criminal street gang . . . with knowledge that its members engage in or have engaged in a pattern of criminal gang activity . . . and who willfully promotes, furthers, assists, or benefits from any felonious criminal conduct by members of that gang."  (Pen. Code, § 182.5.)  Proposition 21 also amended the existing gang enhancement in section 186.22, subdivision (b)(1) to create a new tiered system of enhancements with five-year enhancements for individuals convicted of serious

---

**6**     The dismissal statutes were repealed and reenacted as Code of Civil Procedure section 583.110 et seq. in 1984 without substantive change.  (Stats. 1984, ch. 1705, § 4, p. 6176 [repealed]; Stats. 1984, ch. 1705, § 5, pp. 6176–6181 [reenacted].)

felonies and 10-year enhancements for individuals convicted of violent felonies. (Pen. Code, § 186.22, subd. (b)(1).) [7]

Finally, as most relevant here, Proposition 21 created an alternate penalty provision prescribing indeterminate terms of life imprisonment for those who committed certain enumerated felonies under the same gang-related circumstances (§ 186.22(b)(4)). The alternate penalty provision states that "[a] person who is convicted of a felony enumerated in this paragraph" that is found to be gang-related for the purposes of this section "shall, upon conviction of that felony, be sentenced to an indeterminate term of life," with a specified minimum term of years depending on the felony. (*Ibid.*) One of those enumerated felonies is "home invasion robbery, in violation of

---

[7] As currently written, Penal Code section 186.22, subdivision (b)(1), provides:

"Except as provided in paragraphs (4) and (5), a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the person has been convicted, be punished as follows:

"(A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion.

"(B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years.

"(C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years."

subparagraph (A) of paragraph (1) of subdivision (a) of Section 213," which section 186.22(b)(4) makes punishable by a minimum term of 15 years. (§ 186.22(b)(4)(B).)[8] Section 186.22(b)(4)(B) makes no mention of conspiracy.

Our inquiry into legislative intent begins, as always, with the statutory text. The statute provides that the alternate penalties apply to a "person who is convicted of *a felony enumerated in this paragraph*," "upon conviction *of that felony*." (§ 186.22(b)(4), italics added.) Lopez argues that because conspiracy is not "a felony enumerated in this paragraph," the

---

[8] Section 186.22(b)(4) provides:

"A person who is convicted of a felony enumerated in this paragraph committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(A) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 3046, if the felony is any of the offenses enumerated in subparagraph (B) or (C) of this paragraph.

"(B) Imprisonment in the state prison for 15 years, if the felony is a home invasion robbery, in violation of subparagraph (A) of paragraph (1) of subdivision (a) of Section 213; carjacking, as defined in Section 215; a felony violation of Section 246; or a violation of Section 12022.55.

"(C) Imprisonment in the state prison for seven years, if the felony is extortion, as defined in Section 519; or threats to victims and witnesses, as defined in Section 136.1."

alternate penalty provision does not apply to a conspiracy conviction. The Court of Appeal agreed with Lopez that the statutory language of section 186.22(b)(4) is "unambiguous" in that it applies to individuals convicted of the enumerated crimes, and those crimes do not include conspiracy. (*People v. Lopez*, *supra*, 46 Cal.App.5th at p. 529.) We agree as well.

Lopez argues this ought to be end of the story; when a special penal provision includes a list of criminal convictions to which it applies and that list does not include conspiracy, then the statute plainly excludes conspiracy convictions, and this plain meaning ought to control. Lopez acknowledges, as he must, that *Athar* applied an enhancement to a conspiracy conviction even though the enhancement statute in question did not expressly refer to conspiracy. But he argues that *Athar* is distinguishable because the statute in question imposed the enhancements on individuals "punished under" the money laundering statute, as opposed to individuals "convicted of" money laundering in violation of the statute. (*Athar*, *supra*, 36 Cal.4th at p. 401.) Lopez argues this distinction is significant, because "[w]hile a person convicted of conspiracy to commit home invasion robbery might be arguably punished under [Penal Code] sections 211 and 213 . . . they have certainly not been *convicted* of that offense."

Lopez also acknowledges our decision in *Ruiz*, *supra*, 4 Cal.5th at page 1105, discussed above, in which we concluded that certain laboratory and drug program fees for persons "convicted of" certain enumerated drug offenses are applicable to persons convicted of conspiracy to commit those offenses. But Lopez contends that *Ruiz*, too, is distinguishable because it concerned a "direct consequence" of the target drug offense — no

different in that respect from a provision imposing a base term of imprisonment from that offense — and not additional punishment dependent on other findings about the manner or circumstances in which the crime was committed.

To resolve this case, we ultimately need not decide whether the use of the term "convicted of," as opposed to "punished under," necessarily signals an intent to limit the added punishment to the enumerated crimes of conviction. Nor need we decide whether the answer varies depending on whether the added punishment is a "direct consequence" of the target offense or instead a consequence dependent on additional findings about the manner or circumstances in which the crime was committed. That is because the statute we are considering here contains additional evidence of its intended reach. The available evidence offers particular reason to believe that when voters authorized indeterminate life terms as alternate penalties for convictions of certain enumerated offenses found to be gang-related, they did not intend to sweep in conspiracy convictions as well.

We begin by observing that voters did refer to conspiracy in other sections of Proposition 21. Proposition 21, for example, imposes a five-year enhancement for conspiracy to commit certain gang-related crimes. Specifically, the sentence enhancements prescribed by section 186.22, subdivision (b)(1) apply "in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the person has been convicted." (Pen. Code, § 186.22, subd. (b)(1).) The baseline enhancement is two, three, or four years, but the statute imposes a five-year enhancement when the felony is a "serious felony, as defined in subdivision (c) of Section 1192.7." (*Id.*,

subd. (b)(1)(B).) And voters amended subdivision (c) of section 1192.7 in Proposition 21 to expressly define the term "serious felony" to include not only completed offenses such as robbery, but also "*any conspiracy* to commit an offense described in this subdivision," including robbery. (Pen. Code, § 1192.7, former subd. (c)(42), italics added.)[9] But while voters thus authorized a five-year enhancement for individuals convicted of conspiracy to commit a listed felony, they did not adopt any comparable provision with respect to the alternate life penalties prescribed in section 186.22(b)(4). Under ordinary principles of statutory interpretation, we presume this was an intentional choice. (See, e.g., *In re Jennings* (2004) 34 Cal.4th 254, 273 [" 'where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes' "].)

Other provisions of Proposition 21 also expressly address conspiracy. For instance, the substantive crime established by section 186.22, subdivision (a) punishes a person who "actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal

---

[9]     As we address in greater detail below (at pp. 25–26, *post*), prior to Proposition 21, subdivision (c) of Penal Code section 1192.7 included only one specific type of conspiracy — "conspiracy to commit an offense described in paragraph (24) as it applies to Section 11370.4 of the Health and Safety Code where the defendant conspirator was substantially involved in the planning, direction, or financing of the underlying offense" (§ 1192.7, former subd. (c)(28), as amended by Stats. 1993, ch. 588, § 1, p. 2908).

gang activity." (Pen. Code, § 186.22, subd. (a).)[10] The statutory definition of " 'pattern of criminal gang activity' " included "the commission of, attempted commission of, or solicitation of, sustained juvenile petition for, or conviction of" two or more enumerated offenses. (Pen. Code, § 186.22, former subd. (e), as amended by Stats. 1997, ch. 500, § 2, p. 3126.) In Proposition 21, voters amended this provision to add conspiracy, such that a " 'pattern of criminal gang activity' " is now defined as including the "commission of, attempted commission of, *conspiracy to commit*, or solicitation of, sustained juvenile petition for, or conviction of" two or more enumerated offenses. (Pen. Code, § 186.22, subd. (e)(1), italics added.) Finally, as noted, Proposition 21 created a new gang conspiracy offense in Penal Code section 182.5. As we have previously explained, this gang conspiracy offense and Penal Code section 182 are "quite different provisions covering different kinds of conduct." (*Johnson, supra*, 57 Cal.4th at p. 263.) Rather than displace traditional conspiracy law as applied to gang-related offenses, such as the substantive crime of gang participation, section 182.5 "provided prosecutors additional flexibility in charging a different kind of conspiracy." (*Johnson*, at p. 263.)

In sum, Proposition 21 contains several provisions specifically addressing the law of conspiracy. These provisions

---

[10]  Penal Code section 186.22, subdivision (a) provides: "A person who actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

do not, however, include section 186.22(b)(4), which contains no mention of conspiracy at all. The most natural reading of Proposition 21 is that voters intended for conspiracies to commit gang-related robberies to be punished by an additional five years of imprisonment — as the amendments to the serious felony provisions now provide — but did not believe that unlawful agreements to commit robberies and other enumerated crimes warranted an indeterminate life term under section 186.22(b)(4).

The Attorney General cautions against reading too much into the disparate mentions of conspiracy in Proposition 21. He notes, among other things, that voters may have had independent reasons for adding conspiracy to commit a serious felony to the list of serious felonies in Penal Code section 1192.7, subdivision (c) — an amendment whose consequences were not limited to application of the new serious felony enhancements in Penal Code section 186.22, subdivision (b)(1). (See, e.g., Pen. Code, § 667, subd. (a)(1) [prescribing enhancement for prior serious felony]; *id.*, subds. (b)–(f) ["Three Strikes" sentencing].) He observes that at the time Proposition 21 was passed, Penal Code section 1192.7, subdivision (c) did expressly list one particular conspiracy offense ("conspiracy to commit an offense described in paragraph (24) as it applies to Section 11370.4 of the Health and Safety Code where the defendant conspirator was substantially involved in the planning, direction, or financing of the underlying offense") (Pen. Code, § 1192.7, former subd. (c)(28), as amended by Stats. 1993, ch. 588, § 1, p. 2908), and voters may have decided it was necessary to add conspiracy to the list to dispel any negative inferences that might have arisen because of this more specific reference.

Perhaps so. But then, by similar logic, voters should have added conspiracy to the list of crimes that will trigger an indeterminate life term under section 186.22(b)(4), in order to dispel any negative inferences that might have arisen because of Proposition 21's other express references to conspiracy. They did not. Again, the most natural conclusion to draw is that voters intended for the five-year serious felony enhancement to apply to gang-related robbery conspiracies — and said so expressly — but did not intend impliedly to prescribe indeterminate life terms under section 186.22(b)(4) for conspiracies to commit home invasion robbery or other enumerated offenses.

Practical considerations reinforce this conclusion. The consequence of interpreting the statute otherwise would be to impose dramatically longer terms of imprisonment on individuals convicted not only of traditional conspiracy, as Lopez was in this case, but also of the new gang conspiracy crime created by Proposition 21, which reaches a wider range of conduct. As we noted in *Johnson*, *supra*, 57 Cal.4th at page 262: Section 182.5 "embraces an active and knowing participant who merely *benefits* from the crime's commission, even if he or she did not promote, further, or assist in the commission of that particular substantive offense." Under the Attorney General's interpretation of section 186.22(b)(4), a person who willfully benefited from a home invasion robbery committed by other gang members would presumably be subject to an indeterminate life term, even though he or she never participated in the crime itself. By contrast, the Attorney General concedes that a person who actively participated with other gang members in an attempted home invasion robbery

would receive a sentence of no more than 10 years.[11] Given the terms of Penal Code section 186.22, we consider it unlikely that voters intended this result.

The legislative history of Proposition 21 contains nothing to suggest a different conclusion. The voter information guide described the measure as designed to respond to increases in juvenile crime as well as gang-related crime. The official summary prepared by the Attorney General stated that the initiative, among other things, "[i]ncreases punishment for gang-related felonies; death penalty for gang-related murder; indeterminate life sentences for home-invasion robbery, carjacking, witness intimidation and drive-by shootings; and creates crime of recruiting for gang activities; and authorizes wiretapping for gang activities." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) Official Title and Summary of Prop. 21, p. 44.) Nothing in the materials indicates that the indeterminate life sentences prescribed by section 186.22(b)(4) were intended to apply to unlawful agreements to commit these crimes, even when the agreements never come to fruition. Though the voter information guide contains no direct evidence that voters meant for the alternate penalties in section

---

[11] The Attorney General shows his math as follows: "A gang-related attempted home invasion robbery is punishable by up to either nine years ([Pen. Code,] §§ 186.22, subd. (b)(4)(B), 664 [where target crime's max punishment is life, punishment for attempt is five, seven, or nine years]) or nine years six months, based on half of the maximum term of nine years for attempted home invasion robbery (§§ 213, subd. (a)(1)(A), 664; [additional citations]) plus five years for the applicable gang enhancement for a serious felony (§§ 186.22, subd. (b)(1)(B), 1192.7, subd. (c)(19), (39))."

186.22(b)(4) to apply only to completed offenses, it contains no evidence to the contrary either.

The Attorney General argues that his interpretation of section 186.22(b)(4) is consistent with the overall purpose of the statute. Specifically, he contends that the alternate penalties in section 186.22(b)(4) are designed to deter a particular form of concerted action — action in association with or for the benefit of a criminal street gang — so it would only make sense to apply the penalties to conspiracies to commit the enumerated crimes. The central difficulty with the argument is that Penal Code section 186.22 is not silent on the subject of gang-related conspiracies; it expressly addresses how gang-related conspiracies are to be prosecuted and how they are to be punished. Simply because section 186.22(b)(4) shares some of the same crime-prevention aims as the law of conspiracy does not mean that the voters must have implicitly intended to punish conspiracies to commit home invasion robberies, carjackings, or other enumerated offenses with the same severity as the completed offenses.

In short, the fairest reading of section 186.22(b)(4) evinces an intent to reserve the alternate penalties it prescribes for individuals convicted of the completed target offenses. We are bound to give effect to that intent, though it may not be stated in express terms.

This conclusion does not relieve conspirators of liability from their crimes. Even without the alternate penalty provision in section 186.22(b)(4), the penalties for those crimes are often substantial. As Lopez concedes, persons who conspire to commit gang-related home invasion robbery face up to nine years in prison (see Pen. Code, § 213, subd. (a)(1)(A)), with a serious

felony enhancement of an additional five years (see *id.*, §§ 186.22, subd. (b)(1)(B), 1192.7, subd. (c)(19), (42)), as well as any additional punishment that might be applicable by operation of other enhancement provisions. The only question before us is whether the trial court erred in sentencing Lopez to the alternate penalty prescribed by section 186.22(b)(4). Because section 186.22(b)(4), fairly read, does not apply to conspiracy convictions, we conclude the superior court erred in sentencing Lopez to an indeterminate life term under that provision.[12]

## IV.

We reverse the judgment of the Court of Appeal with instructions to remand for resentencing consistent with this opinion.

---

[12] While this case was pending, the Legislature enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) which amended Penal Code section 186.22 to change the requirements for proving a gang enhancement. (Stats. 2021, ch. 699, § 3.) Although the changes are not directly relevant to the question before us, Lopez nonetheless asks us to consider how Assembly Bill No. 333 (2021–2022 Reg. Sess.) applies to his case. We decline to address this question in the first instance, but instead leave the subject for consideration by the Court of Appeal on remand.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**MILLER, J.**\*

---

**\*** Associate Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Lopez

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 46 Cal.App.5th 505
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.**  S261747
**Date Filed:**  April 7, 2022

_____

**Court:**  Superior
**County:**  Tulare
**Judge:**  Joseph A. Kalashian*

_____

**Counsel:**

Benjamin Owens, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Julie A. Hokans, Rachelle A. Newcomb and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

*Retired judge of the Tulare Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Benjamin Owens
P.O. Box 64635
Baton Rouge, LA 70896
(707) 745-2092

Darren K. Indermill
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
(916) 210-7689