Filed 6/26/24  P. v. Browder CA2/8
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B321402 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA481424) |
| v. | |
| DAITREON THOMAS BROWDER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Laura F. Priver, Judge.  Affirmed in part and remanded with directions.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

On February 7, 2024, we affirmed Daitreon Browder's convictions for murder (Pen. Code,[1] § 187, subd. (a)), premeditated attempted murder (§§ 664 & 187, subd. (a)), shooting from a motor vehicle (§ 26100, subd. (c)) and shooting at an occupied motor vehicle (§ 246). We also reversed the true findings on the section 186.22 gang enhancement allegations and the section 190.2, subdivision (a)(22) gang-related special circumstance allegation. We held that the collective engagement requirement of newly amended section 186.22 required that a predicate crime be committed with at least one other gang member, and there was insufficient evidence of the participation of another gang member in the predicate crimes. There was a split of authority on this issue at the time, and the People's petition for review was granted by the California Supreme Court, which has now transferred the matter to us with directions to vacate our decision and to reconsider the cause in light of *People v. Clark* (2024) 15 Cal.5th 743 (*Clark*). We do so now, and affirm the judgment of conviction, including the true findings on the gang enhancement allegations and the gang-related special circumstance allegation. We remand this matter to permit the trial court to exercise its discretion under section 1385 concerning the firearm enhancement.

---

[1]     Undesignated statutory references are to the Penal Code.

2

## BACKGROUND

On September 4, 2019, about 1:10 p.m., Timothy Phillips began backing his gray car out of the driveway outside his house on South Harvard Boulevard. James Carter, a passenger in the car, knocked Phillips's cigarette out of his hand. Phillips stopped his car near the curb and bent down to pick up his cigarette.

Phillips heard several gunshots as glass began breaking all over the car. Phillips noticed that Carter had been shot and appeared to be unconscious. He drove to a friend's house and put Carter into her car. She drove Carter to the hospital. Carter died from a gunshot wound.

Phillips returned to his home and spoke with police. He told them he saw a four-door burgundy vehicle with tinted windows, which looked like a Mitsubishi or a Mazda. It was the only car on the street. Phillips believed there were two people inside, and that the shots came from the passenger side of the vehicle.[2] He did not hear anything before the shooting began, and nobody in the burgundy vehicle said anything to him.

Much of the police investigation focused on video surveillance footage. Police recovered footage from about 20 locations.

At trial, Detective John Flores testified that surveillance footage from September 4, 2019, showed appellant Browder and Levon Tippit driving a 2003 burgundy Toyota which was registered to appellant. Video surveillance footage from a house on La Salle Avenue captured a partially obscured view of events on Harvard Boulevard. The footage showed Phillips walking

---

[2]      At trial, Phillips denied that he saw anything.

from his front door to his driveway. It then showed Phillips's gray car backing out of the driveway and stopping along the curb. The video showed a white vehicle stop about 20 feet before the intersection with 89th Street, back up and then move forward onto 89th Street, going west. About 1:13 p.m., appellant's burgundy Toyota appeared next to Phillips's car, paused for two to three seconds and then turned right onto 89th Street. Phillips's car immediately went south on Harvard Boulevard.

At trial, Inglewood Police Department Detective Samuel Bailey testified as an expert on gangs, primarily in Inglewood. One such gang is the Inglewood Family Bloods, which has a number of cliques, including the 80th Street clique. Detective Bailey opined that appellant and Tippit were members of the Inglewood Family Bloods and that appellant belonged to the 80th Street clique.

The prosecution offered evidence of three predicate offenses, all committed in 2016 by Inglewood Family Bloods gang members: an assault by means of force likely to produce great bodily injury by Maasai Lopez, an attempted murder by Mitchell Grace, and a first degree murder by Kenny Birdine. As discussed in more detail below, Detective Bailey provided additional information about the facts of the offenses.

According to Detective Bailey, the Inglewood Family Bloods are enemies and rivals of the Neighborhood Crips, including the Rolling 90's Neighborhood Crips. The Rolling 90's claim as their territory the intersection of 91st Street and Hobart Boulevard, which is one block from the Harvard Boulevard residence where the shooting occurred.

4

In response to a hypothetical mirroring of the facts of this case, Detective Bailey opined that the shooting was committed for the benefit of, at the direction of, and in association with a criminal street gang. He described the benefit as "to establish and maintain the fearsome reputation I talked about with their rivals and the neighborhood . . . and law enforcement." As discussed in more detail below, Detective Bailey provided additional testimony that the shooter was targeting a rival gang in that gang's territory. The direction and association elements were satisfied by the fact that two gang members committed the shooting in concert.

## DISCUSSION

A. *Lack of Instruction on the New Collective Engagement Element Was Harmless.*

In *Clark,* the Supreme Court explained that when Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) amended section 186.22, subdivisions (e)(1) and (f), the amendment created what is effectively a new element for the enhancement, collective engagement by the gang in a pattern of criminal activity. (*Clark, supra*, 15 Cal.5th at p. 763.)[3] This new

---

[3]     Assembly Bill 333 was signed into law in 2021 (see Stats. 2021, ch. 699, § 3) and amended section 186.22 in a number of ways. As relevant here, amended subdivision (f) of section 186.22 defines the term "criminal street gang" to mean "an ongoing, organized association or group of three or more persons, . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.) The amended subdivision (e)(1) of section 186.22 in turn defines "pattern of criminal gang activity," to mean, in pertinent

5

element "requires a nexus between the individual predicate offenses and the gang as an organized, collective enterprise." (*Clark*, at p. 749.)

It is undisputed that the jury in this matter was not instructed on this new element of collective engagement as described in *Clark*. In his supplemental brief on remand, appellant contends this error was not harmless, and so this matter must be remanded for a new trial on the section 186.22 and section 190.2, subdivision (a)(22), gang enhancement allegations. We find the error harmless beyond a reasonable doubt.

In *Clark*, *supra*, 15 Cal.5th 743, the California Supreme Court considered what the collective engagement requirement of amended subdivisions (e) and (f) of section 186.22 means. (*Clark*, at p. 749.) The Court held "that collective engagement requires a nexus between the individual predicate offenses and the gang as an organized, collective enterprise. This organizational nexus

---

part, the commission of two offenses enumerated in the statute, "provided . . . [they] were committed *on separate occasions or by two or more members*" of the gang and the offenses provided a benefit to the gang that is more than reputational. (§ 186.22, subd. (e)(1), italics added.)

In his opening brief in this matter, appellant noted there was a split of authority on whether this new definition could constitutionally be applied to section 190.2, subdivision (a)(22), the gang special circumstance allegation; appellant contended that it could be, and we agreed. The California Supreme Court has now held that it is constitutional. (*People v. Rojas* (2023) 15 Cal.5th 561, 566.)

6

requirement is satisfied by showing a connection between the predicate offenses and the organizational structure, primary activities, or common goals and principles of the gang." (*Ibid*.) The Supreme Court explained that the collective engagement requirement "calls for an inquiry not just into how the predicate offenses benefited the gang, but also how the gang works together *as a gang*. It calls for a showing of a connection, or nexus, between an offense committed by one or more gang members and the organization as a whole." (*Id*. at p. 762.)

The Court elaborated: "This organizational nexus may be shown by evidence linking the predicate offenses to the gang's organizational structure, meaning its manner of governance; its primary activities; or its common goals and principles. By reference to these elements of a gang's affairs and operations, we do not mean to overstate the degree of formality required. As we have recognized, some gangs have a ' "loose" ' structure [citation], while others are 'highly ordered and disciplined,' with a 'well-defined' hierarchy [citation]. Similarly, some gangs may have loosely defined goals and principles, while others may have clearly defined missions. Given this variability, collective engagement will be established in different ways." (*Clark, supra*, 15 Cal.5th at p. 762.)

The Supreme Court provided examples of evidence which could show the requisite collective engagement. As relevant here, "evidence might show a . . . general, well-understood expectation that members must engage in certain types of offenses. (E.g., *People v. Elizalde* (2015) 61 Cal.4th 523, 528 [189 Cal.Rptr.3d 518, 351 P.3d 1010] [junior members received a general order to attack rivals to support the gang and earn their status].) In other cases, collective engagement might be shown by

7

demonstrating that the offenses are reflective of the primary activities of the gang, or else adhere to a common goal or plan characteristic of the gang in question.  (E.g., *People v. Johnson* [(2013)] 57 Cal.4th [250, 256] [159 Cal.Rptr.3d 70, 303 P.3d 379] [members played different roles in carrying out the gang's activities, either selling drugs, patrolling the gang's territory, or killing rivals]; *People v. Chhoun* (2021) 11 Cal.5th 1, 16 [275 Cal.Rptr.3d 2, 480 P.3d 550] [a gang's complex robberies followed a common plan of targeting similar victims and relying on members to play specific roles].)"  (*Clark*, *supra*, 15 Cal.5th at p. 762.)

The Court described the collective engagement requirement as a "new" element that applied retroactively and recognized that then-current instructions did not contain this element.  (*Clark*, *supra*, 15 Cal.5th at p. 763.)  The Court found that the lack of instruction on this element could be found to be harmless beyond a reasonable doubt.  (*Ibid.*, citing *People v. Cooper* (2023) 14 Cal.5th 735, 742 (*Cooper*).)  We ask whether, beyond a reasonable doubt, the error did not contribute to the verdict.  (See *Clark*, at p. 764.)  More specifically, as *Cooper* explains: "When a jury instruction has omitted an element of an offense, our task 'is to determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." ' "  (*Cooper*, at pp. 742–743.)

Here, we conclude there is no such contrary evidence for any of the three predicate offenses.  At the same time, the evidence concerning two of the predicate offenses overwhelmingly established the required organizational nexus.  Only two

8

predicate crimes were required.[4]  Thus, beyond a reasonable doubt, a properly instructed reasonable jury would have made the required findings.

The evidence showed that two of the predicate offenses involved attacks by a member of the Inglewood Family Bloods gang on an individual believed to be a member of one of the gangs which together make up the Neighborhood Crips.  Inglewood Family Bloods gang member Maasai Lopez was convicted of an assault with force likely to produce great bodily injury on a perceived member of the Crips Rolling 60's gang and Mitchell Grace was convicted of the attempted murder of a perceived member of the Crips Rolling 100's gang, in Rolling 100's territory.

Detective Bailey testified that due to the long-standing rivalry and "on again, off again shooting war" between Neighborhood Crips and Inglewood Family Bloods, "[t]here's no meeting.  There's no written order.  There's no text message, calls, or emails.  It's understood that if you're from specifically a Blood gang from Inglewood, specifically Inglewood Family, and you have the opportunity to attack one of your rivals, specifically the Neighborhood Crips, that—that you don't have to check in with anybody.  You can go out and Nap bash.  You're expected to do that without receiving some kind of official order from some hierarchy in the gang. [¶] And let's make it from the other direction.  If you had opportunity and you didn't do it, then you'd be dealt with from inside the gang."

---

[4]  The evidence to support an organizational nexus for the third predicate offense is less overwhelming.  In general, Detective Bailey's testimony suggested a possible lack of personal knowledge of some details of this offense.

9

Detective Bailey's testimony shows the required organizational nexus between the predicate crimes and the gang: the existence of a general understanding that Inglewood Family Bloods members should attack members of rival Neighborhood Crips gangs when the opportunity arises. (See *Clark*, *supra*, 15 Cal.5th at p. 762 [collective engagement may be shown by evidence of a "general, well-understood expectation that members must engage in certain types of offenses," such as attacking rivals or by evidence "demonstrating that the offenses are reflective of the primary activities of the gang, or else adhere to a common goal or plan characteristic of the gang in question" such as killing rivals].)

Given the overwhelming evidence of collective engagement and the lack of contrary engagement, we conclude beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.

B.  *No Instructions on the Amended Requirement for Gang Benefit Was Harmless.*

As respondent acknowledges, because we reversed the gang allegation findings based on the insufficiency of the evidence of collective engagement, we did not address appellant's claim that he was prejudiced by the absence of an instruction on Assembly Bill 333's new requirement that both the predicate offenses and charged offenses benefitted the gang in a way that was more than reputational. We address that claim now and find harmless the absence of such an instruction.

Section 186.22, subdivision (g), now provides: "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or

10

silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

As the Supreme Court has explained, the requirement that the benefit to the gang be more than reputational in effect creates a new element for the enhancement. (*People v. Tran* (2022) 13 Cal.5th 1169, 1207.) Thus, "reversal is required unless 'it appears beyond a reasonable doubt' that the jury verdict would have been the same in the absence of the error." (*Ibid*.)

As we have just discussed, the evidence was overwhelming that the two predicate crimes involved attacks on individuals who were perceived to be gang rivals. This is one of the statutory examples of a common benefit that is more than reputational. Thus, beyond a reasonable doubt the jury finding would have been the same in the absence of the error.

The evidence is similar for the current offense. There was overwhelming evidence that appellant targeted a rival gang. Detective Bailey testified that the offense took place on September 4, which was a "hood day" for one of the Inglewood Family Bloods subsets. A hood day was a day of celebration for a gang. Members of other Inglewood Family Bloods subsets could show up to the party or put money into the party or "that kind of stuff" or, if they were not going to show up they could "go hunt [the] enemy, which is favorable, well-looked upon." The route appellant and Tippit took to and from the shooting was a route Inglewood Family Bloods members commonly took from their territory to the territory of the Rolling 90's subset of the Neighborhood Crips. Phillips and Carter were not gang members. However, Phillips's house was in the territory claimed by the Rolling 90's subset of the Neighborhood Crips gang. More specifically, Phillips's house was about a block from the

11

intersection of 91st Street and Hobart Boulevard, which was a "common" hangout spot for the Rolling 90's Crips. There had been several incidents in this intersection involving Rolling 90's gang members, and several shootings in the area. Again, beyond a reasonable doubt, the jury finding would have been the same in the absence of the error.

C.  *Failure to Bifurcate the Section 186.22 Enhancement Allegations Was Harmless.*

Assembly Bill 333 amended the Penal Code to add section 1109, which requires bifurcation of section 186.22 gang enhancement allegations upon request by the defendant. In his opening brief in this matter, appellant contended the amendment applies retroactively to his case and requires a new trial. At the time, there was a split of appellate authority on the retroactivity issue, but we found any error would be harmless. The California Supreme Court has now held that section 1109 does not apply retroactively. (*People v. Burgos* (June 3, 2024, S274743) ___ Cal.5th ___ [2024 WL 2808198].)

D.  *Resentencing is Appropriate for the Firearm Enhancement in Light of Senate Bill No. 81.*

Senate Bill No. 81 (2021–2022 Reg. Sess.), enacted in 2021, amended section 1385 to specify various factors that the trial court must consider in deciding whether to strike enhancements in the interests of justice. As relevant here, amended section 1385, subdivision (c)(2)(B), provides that when multiple enhancements have been imposed, all but one "shall" be dismissed and section 1385, subdivision (c)(2)(C), provides that when the application of an enhancement could result in a

12

sentence of over 20 years, the enhancement "shall" be dismissed. (§ 1385, subds. (c)(2)(B), (C).)

Appellant contends these provisions would apply to the 25 years-to-life sentence imposed for the true finding on the section 12022.53 enhancement. He acknowledges that notwithstanding the use of the word "shall," several Courts of Appeal have held that trial courts maintain discretion to impose an enhancement if dismissing it would endanger public safety. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 290–293; *People v. Anderson* (2023) 88 Cal.App.5th 233 [304 Cal.Rptr.3d 532], review granted Apr. 19, 2023, S278786; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15–21; *People v. Walker* (2022) 86 Cal.App.5th 386 [302 Cal.Rptr.3d 468], review granted Mar. 22, 2023, S278309.)

Appellant contends that pending further guidance from the Supreme Court, the matter should be remanded for resentencing to permit the trial court to consider the factors in amended section 1385 and exercise its discretion to decide whether to strike the section 12022.53 enhancement. We agree. (See, e.g., *People v. Ochoa* (2020) 53 Cal.App.5th 841, 852–853 [where the record is at the very least ambiguous as to the whether the trial court understood and exercised its sentencing discretion, remand is appropriate].)

## DISPOSITION

We remand the sentence on the firearm enhancement to permit the trial court to exercise its discretion under section 1385. The judgment of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.

14